Nos. 12-15572, 12-15848

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

————————————

IN RE: APPLICATION OF REPUBLIC OF ECUADOR and
DR. DIEGO GARCÍA CARRIÓN, the Attorney General of the
Republic of Ecuador, for an Order Pursuant to 28 U.S.C. § 1782
to Conduct Discovery for Use in a Foreign Proceeding.

————————————

On Appeal From The United States District Court
for the Eastern District of California
Case No. 12-mc-00008 LJO (Honorable Lawrence J. O'Neill)

and

The United States District Court
for the Northern District of California
Case No. 11-mc-80171 CRB (Honorable Charles R. Breyer)

————————————————————

**APPELLANTS' CONSOLIDATED OPENING BRIEF**

————————————————————

THEODORE J. BOUTROUS, JR.
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7804

ETHAN D. DETTMER
ENRIQUE A. MONAGAS
JOSHUA S. LIPSHUTZ
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
(415) 393-8292

*Attorneys for Intervenor-Appellant Chevron Corporation and
Respondents-Appellants Dr. Douglas M. Mackay and Dr. Michael A. Kelsh*

## CORPORATE DISCLOSURE STATEMENT

Chevron Corporation is a publicly traded company (NYSE: CVX) that has no parent company.  No publicly traded company owns 10% or more of its stock.  Texaco Petroleum Company is a fifth-tier subsidiary of Chevron Corporation, and no other publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

STATEMENT OF JURISDICTION...........................................................3

STATEMENT OF THE ISSUE ..................................................................5

STATEMENT OF THE CASES ................................................................5

    I.    The ROE's Application To Obtain Discovery From Dr. Mackay ........6

    II.    The ROE's Application To Obtain Discovery From Dr. Kelsh...........8

STATEMENT OF FACTS .........................................................................9

    I.    The Lago Agrio Litigation ..................................................................9

    II.    Chevron's Treaty Arbitration .............................................................13

    III.    The Roles Of Drs. Mackay And Kelsh In The Lago Agrio Litigation And The Treaty Arbitration.................................................16

SUMMARY OF ARGUMENT ..................................................................18

STANDARD OF REVIEW .......................................................................23

ARGUMENT .............................................................................................23

    I.    This Dispute Is Governed By The Plain Text Of The Federal Rules Of Civil Procedure. ................................................................24

    II.    The Plain Text Of Rule 26(b)(3)(A) Protects The Documents At Issue As Work Product.................................................................25

        A.    Revised Rule 26(a)(2)(B) Provides An Exception To, But No Longer Eliminates, The Work Product Protection Afforded Expert Witness Documents Under Rule 26(b)(3)(A)...............................................................................26

i

## **TABLE OF CONTENTS**
(continued)

**Page**

      B.    Rule 26(b)(4) Does Not Eliminate The Work Product Protection Afforded Dr. Mackay's And Dr. Kelsh's Documents Under Rule 26(b)(3)(A)..........................................30

III.   Protecting The Documents At Issue Furthers The Goals Of The 2010 Amendments..............................................................................33

CONCLUSION .....................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ass'n of Irritated Residents v. Fred Schakel Dairy,*
  1:05-cv-00707-AWI-SMS, 2008 WL 2509735 (E.D. Cal. June 23, 2008) .........26

*Botosan v. Paul McNally Realty,*
  216 F.3d 827 (9th Cir. 2000) ................................................................25

*Chevron Corp. v. Camacho Naranjo,*
  667 F.3d 232 (2d Cir. 2012) ........................................... 12, 13

*Chevron Corp. v. Champ,*
  Nos. 1:10-mc-27, 1 :10-mc-28, 2010 WL 3418394
  (W.D.N.C. Aug. 30, 2010) ...................................................11

*Chevron Corp. v. Donziger,*
  768 F. Supp. 2d 581 (S.D.N.Y. 2011) ........................................ 12, 13

*Cooter & Gell v. Hartmarx Corp.,*
  496 U.S. 384 (1990) ...............................................................24

*In re Applic. of Chevron Corp.,*
  No. cv-10-2675 (SRC) (D.N.J. June 11, 2010) ....................................12

*In re Applic. of Chevron Corp.,*
  No. 10-cv-1146-IEG(WMC), 2010 WL 3584520
  (S.D. Cal. Sept. 10, 2010)................................................ 11, 12

*In re Cendant Corp. Sec. Litig.,*
  343 F.3d 658 (3d Cir. 2003) .......................................... 26, 31, 32

*In re Chevron Corp.,*
  Nos. 1:10-mc-00021-22 (D.N.M. Sept. 2, 2010) ..............................11

*In re Pioneer Hi-Bred Int'l,*
  238 F.3d 1370 (Fed. Cir. 2001) .............................................28

*In re Premises Located At 840 140th Ave. NE, Bellevue, Wash.,*
  634 F.3d 557 (9th Cir. 2011) .................................................4

*Molski v. M.J. Cable, Inc.,*
  481 F.3d 724 (9th Cir. 2007)................................................24

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Reg'l Airport Auth. of Louisville v. LFG, LLC*,
   460 F.3d 697 (6th Cir. 2006) .......................................................................28

*Republic of Ecuador v. ChevronTexaco Corp.*,
   376 F. Supp. 2d 334 (S.D.N.Y. 2005) ........................................................10

*SEC v. Reyes*,
   No. 06-cv-04435-CRB, 2007 WL 963422 (N.D. Cal. Mar. 30, 2007) ...............26

*United States ex rel. Eisenstein v. City of New York*,
   540 F.3d 94 (2d Cir. 2008) ...........................................................................24

*United States v. $133,420.00 in U.S. Currency*,
   672 F.3d 629 (9th Cir. 2012) ........................................................................23

*United States v. Carey*,
   120 F.3d 509 (4th Cir. 1997) ................................................................. 25, 31

*United States v. Nobles*,
   422 U.S. 225 (1975) ......................................................................................26

*United States v. Sierra Pac. Indus.*,
   No. CIV S–09–2445 KJM EFB, 2011 WL 2119078
   (E.D. Cal. May 26, 2011) ..............................................................................27

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ........................................................................24

*Yaiguaje v. Chevron Corp.*,
   No. cv-12-454778 (Ont. Sup. Ct. May 30, 2012)........................................16

## Statutes

28 U.S.C. § 1294(1) .............................................................................................4
28 U.S.C. § 2107 .................................................................................................4

## Rules

Fed. R. App. P. 4(a)(1)(A) ....................................................................................4
Fed. R. Civ. P. 26 ....................................................................................... *passim*

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>**Page(s)**</u>

### Other Authorities

Fed. R. Civ. P. 26 Advisory Committee Report (May 29, 2008) ...........................29

Fed. R. Civ. P. 26 Advisory Committee's Note ................................... 29, 31, 32, 33

## INTRODUCTION

This case presents an issue of first impression in this Circuit regarding the correct interpretation of the 2010 amendments to Federal Rule of Civil Procedure 26, and the scope of testifying expert witness discovery under those amendments.

The plain text of Rule 26(b)(3)(A) protects from disclosure all documents "prepared in anticipation of litigation or for trial *by* or *for* another party or its representative (including the other party's attorney, consultant . . . or agent)." The district courts in these actions, initiated under 28 U.S.C. § 1782 and consolidated on appeal, ordered Chevron's expert witnesses, Drs. Mackay and Kelsh (collectively with Chevron, "Respondents"), to produce documents that no party denies were prepared by or for Chevron and its attorneys in connection with pending litigation. Because there is no dispute that the documents at issue in these appeals fall squarely within Rule 26(b)(3)(A)'s protections, and because there is no exception to Rule 26(b)(3)(A) applicable here, the district courts' orders should be reversed.

At the urging of Petitioner-Appellee the Republic of Ecuador ("ROE"), the district courts below adopted a broad exception to Rule 26(b)(3)(A) requiring disclosure of *all* expert witness-related materials, unless expressly *protected* by another, more specific provision of the Rules. But the ROE's proposed exception turns the structure of the Rules upside down.

1

In support of its position, the ROE pointed to an *older*, superseded version of Rule 26 that required testifying expert witnesses to disclose any "data *or other information*" considered in forming their opinion. Fed. R. Civ. P. 26(a)(2)(B) (1993) (emphasis added). District courts had interpreted that language as a "bright-line rule" compelling disclosure of *all* expert witness-related materials, even those materials that constituted trial preparation materials. The 2010 amendments to the Federal Rules, however, eliminated that language, replacing it with a narrower requirement that experts identify only the "facts or data" they considered. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii). But Respondents have already produced all the documents in Drs. Mackay and Kelsh's custody and control identifying the "facts or data" they considered. The documents at issue in these appeals are expert-related documents and communications that do *not* identify "facts or data." Thus, the ROE cannot rely on either the "facts or data" exception or the old "bright-line rule" to compel disclosure of the documents in dispute.

The ROE also pointed to two new provisions of Rule 26 that describe specific protections for certain types of expert witness-related materials, claiming that those "must be" the *exclusive* protections for expert witness-related materials. *See* Fed. R. Civ. P. 26(b)(4)(B) and (C). But nothing in those new provisions describes their protections as exclusive. To the contrary, the Rule expressly describes those protections as falling within the larger umbrella of protections for

2

trial preparation materials provided by Rule 26(b)(3)(A).  Moreover, both new provisions serve a clear purpose:  Rule 26(b)(4)(B) explains that an expert witness's draft reports are protected *even if* they contain "facts or data" the expert considered, and would therefore otherwise be unprotected.  And Rule 26(b)(4)(C) explains that three categories of attorney-expert communications, which would otherwise be protected trial preparation materials, are *un*protected.  There is no basis for the ROE's counterintuitive argument that the *addition* of these new provisions to the Rule had the effect of *eliminating* other protections, especially where nothing in the text suggests such a result.

In short, with limited exceptions not applicable here, the plain language of amended Rule 26 protects expert-related work product.  That plain language serves to effectuate the stated purpose of the Rule's amendments, which is to eliminate the cost and inefficiencies of broad expert discovery under the former rules.  Indeed, this was the motivating principle behind the 2010 amendments.  The ROE's interpretation of the revised Rule 26 would recreate this unnecessary burden, along with the associated waste of time and expense that the Rules Committee tried to alleviate.  This Court should, therefore, reverse.

## STATEMENT OF JURISDICTION

In both cases on appeal, the district courts granted the ROE's motions to compel production of documents pursuant to subpoenas issued under 28 U.S.C.

3

§ 1782. Each district court had subject matter jurisdiction under 28 U.S.C. § 1331. This Court has appellate jurisdiction over these related appeals pursuant to 28 U.S.C. § 1291 because, in a § 1782 action, an order compelling the production of documents is final and appealable. *See In re Premises Located At 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 566 (9th Cir. 2011).

In the *Mackay* matter, the magistrate judge granted the ROE's motion to compel in relevant part on February 14, 2012, and the district judge issued an order denying reconsideration on February 21, 2012. ER 6; ER 3. Respondents Chevron and Dr. Mackay timely filed their Notice of Appeal on March 15, 2012. ER 30 Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2107.

In the *Kelsh* matter, the magistrate judge granted the ROE's motion to compel in relevant part on March 9, 2012, and the district judge issued an order denying reconsideration on April 12, 2012. ER 12; ER 11. Respondents Chevron and Dr. Kelsh timely filed their Notice of Appeal on April 13, 2012. ER 109; Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2107.

Venue is proper in this Court under 28 U.S.C. § 1294(1).

4

## STATEMENT OF THE ISSUE

Does the plain text of Rule 26(b)(3)(A) protect documents prepared in anticipation of litigation, in connection with the work of an expert witness for a party to the litigation, even if those documents do not fall within the narrower categories protected by Rules 26(b)(4)(B) and (C)?[1]

## STATEMENT OF THE CASES

In 2011, the Republic of Ecuador and Dr. Diego Garcia Carrión, the Attorney General of the Republic of Ecuador, filed a series of applications under 28 U.S.C. § 1782 seeking the issuance of subpoenas to experts Chevron hired to write expert reports that it submitted in litigation pending in Lago Agrio, Ecuador. The § 1782 applications purportedly seek evidence for use in a foreign proceeding, *Chevron Corporation and Texaco Petroleum Corporation v. The Republic of Ecuador*, PCA Case No. 2009-23, a Bilateral Investment Treaty arbitration (the "Treaty Arbitration"), under the rules of the United Nations Commission on International Trade Law. Chevron commenced the Treaty Arbitration against the ROE in September 2009, and is seeking relief from the $18.2 billion judgment that was later entered in the Lago Agrio litigation. That judgment was procured in part

---

[1] The Federal Rules of Civil Procedure relevant to this issue appear as an addendum to this brief, for the Court's convenience.

by the ROE's denials of due process, fair treatment, and international-law rights in Ecuador.

## I.    The ROE's Application To Obtain Discovery From Dr. Mackay

The ROE filed a § 1782 application seeking discovery from Dr. Mackay on June 3, 2011 in the Eastern District of California (No. 12-mc-0008). That application was granted on September 13, 2011, and Chevron and Dr. Mackay produced over 62,000 pages of documents to the ROE. *See* ER 50.

Chevron and Dr. Mackay asserted work product protection over certain documents and logged those documents accordingly. Some of the documents were withheld as draft reports under Federal Rule of Civil Procedure 26(b)(4)(B), as that rule was revised in 2010. Other documents were withheld as attorney-expert communications under revised Rule 26(b)(4)(C). Finally, some documents were withheld as trial preparation material under revised Rule 26(b)(3)(A).

The ROE moved to compel the production of documents Chevron and Dr. Mackay maintained were protected work product or trial preparation materials. On February 14, 2012, Magistrate Judge Austin of the Eastern District of California granted the ROE's motion to compel in part:

> Respondents are required to produce every document listed on their privilege log(s) unless it falls under one of the following two categories: (1) Draft reports prepared by Dr. Mackay; and (2) Communications directly between Dr. Mackay and counsel . . .

ER 8-9.  In other words, Judge Austin held that Chevron and Dr. Mackay could properly withhold documents under Rules 26(b)(4)(B) and (C), but that documents falling outside those two narrow protections could not otherwise be protected by Rule 26(b)(3)(A).  Judge Austin also ordered Chevron and Dr. Mackay to submit for *in camera* review any documents they believed should be withheld under the two protected categories.  ER 9-10.

Chevron filed a motion for reconsideration asking District Judge Lawrence O'Neill to resolve the same issue of law that is now presented in this appeal:  "Can documents prepared in anticipation of litigation, *by* an expert witness *for* a party to the litigation, be protected under the revised Rule 26(b)(3)(A), even if they do not fall within the specific protections of Rules 26(b)(4)(B) or (C)?"  ER 37 (emphasis in original).

Without awaiting the ROE's responsive briefing on this legal question, Judge O'Neill denied Chevron's motion for reconsideration.  ER 3.  In so doing, he stated that Chevron "fail[ed] to identify particular documents or categories of documents which they claim are protected from discovery" and that Chevron had "fail[ed] to utilize in camera review without explanation."  ER 5.  Judge O'Neill's order thus seems to have misperceived the nature of the dispute between the parties.  Under Chevron's interpretation of Rule 26, *all* of the Rule 26(b)(3)(A) documents on its log were protected, whereas under the ROE's and Magistrate

7

Judge Austin's interpretation, *none* of them were protected. Accordingly, the *in camera* review process established by Magistrate Judge Austin had no bearing on the parties' dispute—it addressed only documents falling within the two categories of documents that both parties (and Judge Austin) agreed were protected by Rule 26(b)(4), and not the withholding of documents outside those two categories, whose protection turned exclusively on the proper interpretation of Rule 26(b)(3)(A).

After Judge O'Neill rejected Chevron's effort to clarify this apparent misunderstanding, ER 1, Chevron and Dr. Mackay appealed and, as required by the district court's Order, produced roughly 3,000 additional pages under an agreed protective order. *See* ER 32. Under the terms of the protective order, the ROE is permitted to use the documents, materials, information, and deposition testimony produced "for the sole purpose of conducting the Bilateral Investment Treaty arbitration." ER 33. In addition, upon entry of an order or opinion by this Court deeming some or all of the produced materials privileged, the ROE will be "forbidden from using, filing, sharing, or otherwise relying upon or disclosing those [materials]" and also will be "required to promptly return and/or destroy the privileged [materials] and certify thereto." ER 34.

## II.    The ROE's Application To Obtain Discovery From Dr. Kelsh

The ROE filed a § 1782 application seeking discovery from Dr. Kelsh on

8

September 23, 2011 in the Northern District of California (Case No. 11-mc-80171). That application was also granted. ER 257. Chevron and Dr. Kelsh produced over 197,000 pages to the ROE and withheld other documents under the protections provided by Rules 26(b)(3)(A), (b)(4)(B), and (b)(4)(C).

The ROE again filed a motion to compel production of all the documents on Chevron and Dr. Kelsh's privilege log. After considering the parties' arguments, Magistrate Judge Cousins held that, under the 2010 amendments to Rule 26, "expert materials and communications that fall outside the scope of Rule 26(b)(4)(B)-(C) are not work product and are, therefore, discoverable." ER 19. Chevron and Dr. Kelsh filed a motion for relief from the district judge raising the same legal issue described above, but District Judge Charles Breyer denied that motion and affirmed Judge Cousins' Order. ER 11. Chevron and Dr. Kelsh immediately appealed and moved to consolidate the Kelsh appeal with the Mackay appeal; and this Court consolidated the appeals. *See* ER 107; ER 28.

## STATEMENT OF FACTS

### I.    The Lago Agrio Litigation

From 1964 to 1992, Texaco Petroleum Company ("TexPet") held an interest in an oil consortium in the Oriente region of Ecuador. By 1976, Ecuador's state-owned oil company, Petroecuador, became the majority owner of the consortium

and has been the sole owner and operator since 1992. ER 289.[2]  In 1995, TexPet, the ROE, and Petroecuador entered into a settlement and release agreement under which TexPet agreed to remediate a portion of the former consortium sites proportionate to its minority ownership interest, leaving the remaining remediation to be performed by Petroecuador. *Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2005).  In 1998, after TexPet completed the remediation conducted under the supervision of the ROE and outside auditors, Petroecuador and the ROE "releas[ed], absolv[ed], and discharg[ed]" TexPet from any environmental liability arising from the consortium's activities. *Id.* at 342.

Years after TexPet ceased operations and completed its remediation in Ecuador, one of Chevron's subsidiaries merged with Texaco, TexPet's ultimate parent company.  Chevron thereby became an indirect shareholder of TexPet. *See* ER 286.

In contrast to TexPet's prompt cleanup, for years Petroecuador failed to conduct any remediation of the former consortium sites, and compiled an abysmal environmental record, including 1,415 spill events between 2000 and 2008 alone. This record led Ecuador's President Correa to publicly declare that Petroecuador "has dreadful environmental management practices," ER 61; ER 387, and the

---

[2] Before its termination, the consortium's activities generated US$23 billion, 97.3% of which was retained by the ROE.  ER 355.

Ecuadorian plaintiffs' counsel in the Lago Agrio litigation to admit that "Petro[ecuador] has inflicted more damage and many more disasters than Texaco itself," "but since it's a state-owned company, since it's the same people involved in the laws and all, no one says a thing." ER 75; ER 402.

In 2003, a group of American and Ecuadorian lawyers initiated the Lago Agrio litigation against Chevron, but not Petroecuador or the ROE, claiming that TexPet's operations harmed the environment. Numerous federal district courts have now determined that the Lago Agrio litigation has been tainted by the Lago Agrio plaintiffs' lawyers serious acts of fraud and malfeasance.[3]   The District

---

3   *E.g.*, *In re Chevron Corp.*, Nos. 1:10-mc-00021-22, slip op. at 3 (D.N.M. Sept. 2, 2010) (The Ecuadorian plaintiffs and their attorneys and representatives engaged in "corruption of the judicial process, fraud, attorney collusion with the Special Master, inappropriate ex parte communications with the court, and fabrication of reports and evidence"); *Chevron Corp. v. Champ*, Nos. 1:10-mc-27, 1 :10-mc-28, 2010 WL 3418394, at *6 (W.D.N.C. Aug. 30, 2010) ("While this court is unfamiliar with the practices of the Ecuadorian judicial system, the court must believe that the concept of fraud is universal, and that what has blatantly occurred in this matter would in fact be considered fraud by any court. If such conduct does not amount to fraud in a particular country, then that country has larger problems than an oil spill."); *In re Applic. of Chevron Corp.*, No. 10-cv-1146-IEG(WMC), 2010 WL 3584520, at *6 (S.D. Cal. Sept. 10, 2010) ("There is ample evidence in the record that the Ecuadorian Plaintiffs secretly provided information to Mr. Cabrera, who was supposedly a neutral court-appointed expert, and colluded with Mr. Cabrera to make it look like the opinions were his own.   Thus, any privilege which existed was waived; Respondents' claim of privilege neither bars production of the subpoenaed documents nor gives [plaintiffs' technical consultant] Powers a basis for refusing to testify."); *In re Applic. of Chevron Corp.*, 633 F.3d 153, 166 (3d Cir.

Court for the Southern District of New York, for example, concluded: "There is substantial evidence that [counsel for the Ecuadorian Plaintiffs] have improperly . . . pressured, intimidated, and influenced Ecuadorian courts . . . ." *In re Applic. of Chevron Corp.*, 749 F. Supp. 2d 141, 162 (S.D.N.Y. Nov. 10, 2010) (corrected opinion). Indeed, the Lago Agrio proceedings and the $18.2 billion judgment issued from the Ecuador court in February 2011 are so tainted by fraud and corruption that the District Court for the Southern District of New York issued a preliminary injunction prohibiting the Lago Agrio plaintiffs, their agents, and co-conspirators from seeking to enforce the judgment before a trial on the merits of its enforceability could be held. *Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581, 660 (S.D.N.Y. 2011), *injunction vacated on other grounds*, *Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232 (2d Cir. 2012). Although the U.S. Court of Appeals for the Second Circuit later vacated the preliminary injunction on procedural grounds, the Southern District of New York's fraud findings remain

---

Feb. 3, 2011) ("Though we recognize that the Lago Agrio Court may view what seems to us to be a conflict of interest differently than we do, we believe that this showing of [plaintiffs' technical consultant] Villao's dual employment is sufficient to make a prima facie showing of a fraud that satisfies the first element of the showing necessary to apply the crime-fraud exception to the attorney-client privilege."); *In re Applic. of Chevron Corp.*, No. cv-10-2675 (SRC), Hrg. Tr. at 43:13–44:16 (D.N.J. June 11, 2010) ("As far as the Court is concerned, the concept of an employee of a party covertly functioning as a consultant to a court appointed expert in the same proceeding can only be viewed as a fraud upon that tribunal . . . .").

undisturbed. *See Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012) (vacating the preliminary injunction but expressing "no view on the merits of the parties' various charges and counter-charges regarding the Ecuadorian legal system and their adversaries' conduct of this litigation, which may be addressed as relevant in other litigation before the district court or elsewhere"); *Chevron Corp. v. Donziger*, No. 11-cv-00691-LAK, Dkt. 468 at 7 (S.D.N.Y. May 14, 2012) (denying motion to dismiss Chevron's RICO claims against plaintiffs and certain of their lawyers and observing that Second Circuit opinion "did not pass . . . on this Court's findings with respect to . . . evidence of fraud").

## II.    Chevron's Treaty Arbitration

In September 2009, Chevron and TexPet commenced the Treaty Arbitration against Ecuador under the U.S.-Ecuador Bilateral Investment Treaty ("BIT"). *See generally* ER 79-100; ER 420-42. The BIT establishes a procedure for American investors to bring claims before an impartial adjudicator when they believe that their Treaty rights have been violated. The individual or company may submit "the dispute for settlement by binding arbitration . . . in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL)," among other options. ER 448-49.

13

Chevron and TexPet invoked the BIT arbitration procedure to seek relief from the ROE's denials of due process, fair treatment, and international-law rights in the Lago Agrio litigation.  Chevron and TexPet alleged in their notice of arbitration that "[i]n breach of the 1995 and 1998 agreements and the Treaty, Ecuador today is colluding with a group of Ecuadorian plaintiffs and U.S. contingency-fee lawyers" in the Lago Agrio litigation and that "Ecuador improperly seeks to shift to Chevron the responsibility for impact caused by Petroecuador's own oil operations since 1992."  ER 83; ER 425.  The ROE's unlawful actions "involve[ ] Ecuador's various organs of State," and "Ecuador's judicial branch has conducted the Lago Agrio litigation in total disregard of Ecuadorian law, international standards of fairness, and Chevron's basic due process and natural justice rights, and in apparent coordination with the executive branch and the Lago Agrio plaintiffs."  *Id.*  Contrary to the ROE's assertions in its applications for discovery, Chevron does not seek to retry the merits of the Lago Agrio litigation in the Treaty Arbitration, but rather to address the ROE's conduct, including conduct of the Ecuadorian judiciary, regarding Chevron's due process rights and Chevron's and TexPet's rights under the settlement and release agreements.

Chevron filed a request for interim relief before the Tribunal, and in February 2011—the same month that the $18.2 billion judgment was entered

against Chevron in the Lago Agrio litigation—after hearings and the presentation of extensive evidence supporting Chevron's claims for interim relief, the Tribunal issued an interim order requiring the ROE "to take all measures at its disposal to suspend or cause to be suspended the enforcement or recognition within and without Ecuador of any judgment against [Chevron] in the Lago Agrio case" pending further order of the Tribunal. *See* ER 469.

On January 25, 2012, the Treaty Arbitration Tribunal confirmed its February 2011 order and converted it into an enforceable interim award. *See* First Interim Award on Interim Measures, Treaty Arbitration between Appellees and the Republic of Ecuador in The Hague, Permanent Court of Arbitration, Case No. 2009-23 (Jan. 25, 2012). On February 16, 2012, the Tribunal reconfirmed its Interim Order and First Interim Award and expanded the scope of its orders in the Second Interim Award on Interim Measures, requiring the ROE, including its judiciary, to take all measures necessary to prevent enforcement of the Ecuadorian judgment within and outside of Ecuador. *See* Second Interim Award on Interim Measures, Treaty Arbitration between Appellees and the Republic of Ecuador in The Hague, Permanent Court of Arbitration, Case No. 2009-23 (Feb. 16, 2012). Nevertheless, the ROE is presently in violation of the terms of the interim awards and the Lago Agrio plaintiffs have commenced enforcement proceedings in

15

Canada.  *See* Statement of Claim, *Yaiguaje v. Chevron Corp.*, No. cv-12-454778 (Ont. Sup. Ct. May 30, 2012).

On February 27, 2012, the Tribunal held that it has jurisdiction to hear the dispute.  *See generally* ER 114-250.  The Tribunal adopted a "twin track" procedure in which certain discrete legal issues will be resolved by way of briefing and a hearing on November 26-28, 2012, followed by briefing on the merits of the dispute.  The ROE's brief on the merits is due on February 18, 2013.  Procedural Order No. 11 at 2, Treaty Arbitration between Appellees and the Republic of Ecuador in The Hague, Permanent Court of Arbitration, Case No. 2009-23 (May 15 2012).  Although the Tribunal is vested with the power to order the production of evidence, to date, neither party has asked the Tribunal to exercise this power. *See generally* ER 101-105.

### III.    The Roles Of Drs. Mackay And Kelsh In The Lago Agrio Litigation And The Treaty Arbitration

Drs. Mackay and Kelsh were retained to assist Chevron in its defense of the Lago Agrio litigation.  In that capacity, they worked closely with Chevron's lawyers, in-house scientists, outside consultants, and other experts similarly retained.  Many of the documents and communications prepared by Drs. Mackay and Kelsh, along with many of the documents and communications provided to them, were created in anticipation of litigation with the intent that they would be

16

kept confidential because they revealed thought-processes regarding Chevron's defense strategies.

Dr. Mackay submitted expert testimony to the Lago Agrio court in the form of four reports authored in 2006, 2007, and 2010. Dr. Mackay primarily opined on the parties' respective sampling and analysis plans and the scientific defensibility of the Lago Agrio plaintiffs' Judicial Inspection and expert reports. *See* No. 12-mc-00008-GSA (E.D. Cal. July. 15, 2012), Dkt. 12. Dr. Kelsh, an experienced epidemiologist, was retained in 2008 to rebut allegations about excess cancer deaths and the need for new public health infrastructure, which were made in the global damages assessment of the supposedly neutral court-appointed expert Richard Stalin Cabrera Vega—a report that Chevron has since discovered was ghostwritten by the Lago Agrio plaintiffs. *See* ER 418. Dr. Kelsh also submitted a report in 2009, in response to a supplemental report supposedly authored by Cabrera, and reports responding to similar claims made by experts retained by the Lago Agrio plaintiffs in 2010.

The documents Respondents withheld as work product in the cases below primarily involve communications that took place between and among Chevron's litigation team members, which—due to the complex and highly technical nature of the allegations in the Lago Agrio litigation—included lawyers, in-house scientists, consultants, and expert witnesses, and revolved around litigation and

17

technical strategy, investigation, and case management. These communications were not merely recitations of the facts or data considered by the experts in drafting their respective reports. For example, Respondents withheld an email chain among Dr. Mackay and his co-authors discussing a draft of their report, emails between another Chevron expert and his assistant, and an email chain among Chevron's experts, employees, and lawyers discussing a draft of Dr. Mackay's report. *See* No. 12-mc-00008-GSA (E.D. Cal. July. 15, 2012), Dkt. 34.

The district courts' orders compel Respondents to turn over to the ROE all of these documents even though there is no dispute that they were prepared by Chevron's agents in anticipation of litigation and, therefore, are protected under the plain language of the Rules.

## SUMMARY OF ARGUMENT

Prior to its amendment in 2010, most courts interpreted Federal Rule of Civil Procedure 26 as creating a "bright-line rule" requiring the disclosure of all materials in the possession of a testifying expert. The 2010 amendments to Rule 26, however, eliminated the language requiring disclosure of all testifying expert materials, and replaced it with language requiring only that "facts or data" be disclosed. That language change was specifically intended to limit the scope of discovery regarding testifying experts.

18

These appeals present a narrow but important legal question arising out of the 2010 amendments to Rule 26, which no circuit court in the nation has yet decided: Are documents prepared in anticipation of litigation, in connection with the work of an expert witness performed *for* a party to the litigation, protected under Rule 26(b)(3)(A), even if they do not fall within the more specific protections of Rules 26(b)(4)(B) or (C)? The rulings below hold they are not. But those holdings are based on the old "bright-line rule," and are contradicted by the plain text of the current rule and the motivation behind the 2010 amendments.

The text of Rule 26 is unambiguous: Rule 26(b)(3)(A) protects all "documents and tangible things that are prepared in anticipation of litigation or for trial **by** or ***for*** another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). The ROE does not, and cannot, dispute that the documents at issue were prepared in connection with expert witnesses working for Chevron and Chevron's attorneys in the Lago Agrio litigation, and thus they fall squarely within the text of the rule.

Thus the question before this Court is whether Rule 26 requires disclosure of all documents provided to an expert witness, regardless of whether they are protected trial preparation materials and regardless of whether they constitute "facts or data" considered by the expert. The text of Rule 26 provides no basis to

19

require such a broad disclosure. Rather, the text of Rule 26, as amended in 2010, creates only narrow exceptions to the protection provided for trial preparation materials. It requires the disclosure of otherwise protected facts, data, and specific categories of communications between the expert and a party's attorneys. Nowhere in the Rule is there a provision requiring disclosure of all documents in the possession of a testifying expert.

Indeed, as illustrated in the diagrams below, the ROE's view of Rule 26 is *identical* to Respondents' view in all but one respect: The ROE says the documents at issue are unprotected because of an unidentified exception to Rule 26(b)(3)(A)—indicated in Diagram B by a large white oval unmoored to any subsection of Rule 26—supposedly requiring disclosure of all expert-related materials unless they fall within the protections of two *other* rules, Rules 26(b)(4)(B) and (C):





The plain terms of Rules 26(b)(4)(B) and (C), however, explain that the protections they offer—for drafts of expert reports and certain communications between experts and counsel, respectively—are merely *aspects* of the broader

21

protection provided by Rule 26(b)(3)(A). There is nothing in the language of those rules saying that Rules 26(b)(4)(B) and (C) are the *only* protections provided by Rule 26(b)(3)(A) with respect to work performed by expert witnesses, as the district courts concluded. Put another way, the work product protection provided by Rule 26(b)(3)(A) should apply even if the experts' documents and communications fall outside the specific protections provided by Rules 26(b)(4)(B) and (C).

Under this correct interpretation of the current Rule 26, Chevron and its experts asserted work product protection over documents and communications prepared in connection with their work—all of which was performed for Chevron and its attorneys in anticipation of litigation—unless they fell within a defined exception. The applicable exceptions are described in Rule 26(a)(2)(B)(ii) and Rules 26(b)(4)(C)(i)-(iii). In accordance with those rules, Respondents collectively produced over 259,000 pages of documents, including any documents or communications identifying "the facts or data [they] considered . . . in forming" their expert opinions in the Lago Agrio litigation. Fed. R. Civ. P. 26(a)(2)(B)(ii).[4] And Respondents correctly withheld communications between and among

---

[4] Under Rule 26(b)(4)(B), however, Respondents withheld draft expert reports even if they contained "facts or data" considered by Chevron's experts. That provision is not at issue in these appeals.

22

Chevron-retained experts—including the experts' own team members—relating to their work on the Lago Agrio litigation, unless they (i) "relate[d] to compensation for the expert's study or testimony"; (ii) "identif[ied] facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed"; or (iii) "identif[ied] assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii).

Respondents therefore respectfully request that this Court reverse the district courts' orders to the extent they held that Respondents' productions were insufficient as a matter of law.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's interpretation of the Federal Rules of Civil Procedure. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637 (9th Cir. 2012).

## ARGUMENT

The plain language of Rule 26(b)(3)(A) is unambiguous and controls the outcome of this appeal: Materials prepared for a party or that party's attorney, in anticipation of litigation or in preparation for trial, are protected from disclosure unless an explicit exception located elsewhere in the Federal Rules applies. Respondents, therefore, properly asserted work product protection over documents

23

and communications prepared in connection with Dr. Mackay's and Dr. Kelsh's work—all of which was performed for Chevron and its attorneys in the Lago Agrio litigation—unless it fell within a defined exception.  The district courts' orders, which both reached a contrary interpretation of Rule 26, should be reversed.

## I.    This Dispute Is Governed By The Plain Text Of The Federal Rules Of Civil Procedure.

This Court interprets the Federal Rules of Civil Procedure in accordance with their plain text.  *See, e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 391 (1990) ("We therefore interpret Rule 11 according to its plain meaning[.]"); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) ("Our interpretation of the Federal Rules of Civil Procedure begins with the relevant rule's 'plain meaning.'").  Only if the text of a particular rule is unclear does this Court consult the Advisory Committee Notes accompanying the rule.  *See United States ex rel. Eisenstein v. City of New York*, 540 F.3d 94, 97 (2d Cir. 2008), *aff'd*, 2009 U.S. LEXIS 4316 (June 8, 2009) ("When interpreting a rule of procedure, we review the text for its plain meaning.  *To the extent that the text is ambiguous*, we seek to determine the intent by looking to other materials, such as the Advisory Committee Notes that often accompany the rules.") (internal citations and quotation marks omitted) (emphasis added); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 732 (9th Cir. 2007) ("Statutory interpretation begins with the plain meaning

of the statute's language.  Where the statutory interpretation is clear and consistent with the statutory scheme at issue, the plain language of the statute is conclusive and the judicial inquiry is at an end.") (quoting *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000)).

In addition, the plain language of a rule trumps any contradictory interpretation in the Advisory Committee's notes.  As the Fourth Circuit explained:

> Whether we agree with all of the policy considerations or whether the rule effectively addresses them, we are bound to apply the rule in the manner in which it is written. . . .  If the Advisory Committee Note was the authority controlling this case, its ambiguity might be resolved in favor of the policy arguments and legislative history which the parties have called to our attention.  *But the Advisory Committee Note is not the law; the rule is*.  Accordingly, if the Advisory Committee Note can be read in two ways, we must read it, if we consult it at all, in a manner that makes it consistent with the language of the rule itself, and if the rule and the note conflict, the rule must govern.  Because the rule on the issue before us is unambiguous, we need not even consult the note to determine the rule's meaning.

*United States v. Carey*, 120 F.3d 509, 512 (4th Cir. 1997) (emphasis added).

## II.   The Plain Text Of Rule 26(b)(3)(A) Protects The Documents At Issue As Work Product.

All the documents the ROE seeks were prepared by or for Chevron and its attorneys in the Lago Agrio litigation.  *See* ER 49; ER 252.  Accordingly, both the documents *prepared by* Drs. Mackay and Kelsh and the documents *provided to* Drs. Mackay and Kelsh that were prepared for the Lago Agrio litigation, fall within the scope of Rule 26(b)(3)(A)'s protection for trial preparation material:

25

(3) Trial Preparation: Materials.

(A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 667 (3d Cir. 2003) (documents and communications that were "intended to be confidential and made in anticipation of litigation" meet the requirements for work product protection).  As protected trial preparation materials, these documents are not discoverable unless they are subject to an exception requiring disclosure.  *See United States v. Nobles*, 422 U.S. 225, 238–39 (1975).

## A.    Revised Rule 26(a)(2)(B) Provides An Exception To, But No Longer Eliminates, The Work Product Protection Afforded Expert Witness Documents Under Rule 26(b)(3)(A).

Prior to the December 2010 amendments to Rule 26, many courts— including courts in this Circuit—applied a broad exception to work product protection for expert witness materials.  *See, e.g.*, *SEC v. Reyes*, No. 06-cv-04435-CRB, 2007 WL 963422, at *1 n.1 (N.D. Cal. Mar. 30, 2007); *Ass'n of Irritated Residents v. Fred Schakel Dairy,* 1:05-cv-00707-AWI-SMS, 2008 WL 2509735, at *1 (E.D. Cal. June 23, 2008).  The foundation for the old "bright line" rule was the

plain text of Rule 26 as it existed at that time, specifically the testifying expert disclosure provisions of Rule 26(a)(2)(B), which required disclosure of "the data *or other information* considered by the witness." Fed. R. Civ. P. 26(a)(2)(B) (1993) (emphasis added); *see United States v. Sierra Pac. Indus.*, No. CIV S–09–2445 KJM EFB, 2011 WL 2119078, at *8 (E.D. Cal. May 26, 2011) ("[The] bright-line waiver rule within the Ninth Circuit . . . stems from the . . . require[ment] [for] parties to disclose the 'data [or] other information' that reporting experts considered in forming their opinions. Fed. R. Civ. P. 26(a)(2)(B) (effective until December 1, 2010). The 'data [or] other information' language was intended to put a stop to arguments that materials given to testifying expert witnesses were privileged or protected."). As one federal circuit court explained:

> [T]he 1993 [version of] Rule 26 of the Federal Rules of Civil Procedure make[s] clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report. Rule 26(a)(2) requires that the testifying expert's report contain . . . the **data or other information** considered by the witness in forming the opinions. The accompanying Advisory Committee Note explicitly states that the report is to disclose the **data and other information** considered by the expert. *Given this obligation of disclosure*, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." *See also TV-3, Inc. v. Royal Ins. Co. of Am.*, 194 F.R.D. 585, 589 (S.D. Miss. 2000) (correspondence between counsel and expert witness is discoverable,

"*given plain language of Rule 26(a)(2)* and its accompanying Advisory Committee Note").

*In re Pioneer Hi-Bred Int'l*, 238 F.3d 1370, 1375 (Fed. Cir. 2001) (internal quotation marks and alterations omitted) (emphases added). Other courts interpreting that same phrase similarly held that "[h]ad the drafters intended to require disclosure of facts only, they would not have needed to include the phrase 'or other information.'" *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 716 (6th Cir. 2006). They further reasoned that because the phrase "or other information" in old-Rule 26(a)(2)(B) was unqualified, litigants were required to produce *all* documents provided to testifying experts, including otherwise privileged documents. *Id*.

In December 2010, however, the language of former Rule 26(a)(2)(B) was significantly narrowed, requiring testifying experts to disclose only "the *facts or data* considered by the witness." Fed. R. Civ. P. 26(a)(2)(B)(ii) (2010) (emphasis added). Thus, the "bright line" rule's textual foundation—the unqualified, expansive phrase "or other information"—was discarded in favor of new language limiting the universe of discoverable expert witness work product to documents identifying "facts or data." As the Advisory Committee explained, "[t]he refocus of disclosure on 'facts or data' is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel." Fed. R. Civ. P. 26

28

Advisory Committee's Note, "2010 Amendments."  Accordingly, all of the pre-amendment case law relying on a "bright-line" discoverability of testifying experts' documents has been superseded by the amended Rule, which eliminated the entirety of the old "bright-line" approach's former textual basis.

Indeed, the Rules Advisory Committee comments show that the revised Rule 26(a)(2)(B) can no longer be read to imply the discoverability of all documents or communications involving expert witnesses like Drs. Mackay and Kelsh, but only documents and communications identifying "facts or data" they considered in forming their opinions.  The Rules Advisory Committee explained this precise distinction in the context of identical "facts or data" language in Rule 26(b)(4)(C): "[T]he exception applies only to communications 'identifying' the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected."  May 29, 2008 Advisory Committee Report.

Thus, Rule 26(a)(2)(B) cannot be the basis for the district courts' orders. Respondents have already produced any documents identifying the "facts or data" considered by Drs. Mackay and Kelsh and do not dispute the discoverability of those documents.  The only documents at issue in these appeals are documents that do *not* identify "facts or data," whose Rule 26(b)(3)(A) protection is unaffected by the amended Rule 26(a)(2)(B).

**B.    Rule 26(b)(4) Does Not Eliminate The Work Product Protection Afforded Dr. Mackay's And Dr. Kelsh's Documents Under Rule 26(b)(3)(A).**

The 2010 amendments to Rule 26 also added two new provisions intended to guarantee that certain documents and communications relating to expert witness work would be protected. Rule 26(b)(4)(B) and (C) provide as follows:

> (B) Trial-Preparation Protection for Draft Reports or Disclosures. *Rules 26(b)(3)(A) and (B) protect* drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

> (C) Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. *Rules 26(b)(3)(A) and (B) protect* communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

>> (i) relate to compensation for the expert's study or testimony;

>> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

>> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(B), (C) (2010) (emphasis added). These provisions do not purport to be the only work-product protections available for expert-related documents and communications, as the district courts held. Nor do they purport to be standalone protections that uniquely apply to expert-related work. Instead, as can be seen in the italicized language above, both provisions are *specific aspects* of

the broader work-product protection provided by Rules 26(b)(3)(A) and (B).

The ROE has argued that Rules 26(b)(4)(B) and (C) serve no purpose unless they are interpreted as the *only* protections available for expert-related materials. *See* No. 11-mc-80171 (N.D. Cal. Dec. 9, 2011), Dkt. 45. But that is not so. The explicit protection of all experts' draft reports under Rule 26(b)(4)(B) ensures that drafts will not be discoverable even if they contain "facts or data" (as most will). And Rule 26(b)(4)(C) establishes a detailed list of three exceptions to the protections provided to expert communications with an attorney.

If Rules 26(b)(4)(B) and (C) were intended to be the only work product protections for expert documents and communications, the Rules would have said so, rather than including them within the broader umbrella of Rule 26(b)(3)(A). *See United States v. Carey*, 120 F.3d 509, 512 (4th Cir. 1997) ("Whether we agree with all of the policy considerations or whether the rule effectively addresses them, we are bound to apply the rule in the manner in which it is written."). Nothing in the plain text of Rules 26(b)(4)(B) or (C) displaces the protection for trial preparation material in Rule 26(b)(3)(A). *See In re Cendant Corp. Sec. Litig.*, 343 F.3d at 664-65 ("Rule 26(b)(3) provides work product protection independently of Rule 26(b)(4)(B)."). Emphasizing this point, the Advisory Committee's notes state that Rule 26(b)(4)(C) "does not exclude protection under other doctrines, such as privilege or independent development of the work-product doctrine." Fed. R. Civ.

31

P. 26 Advisory Committee's Note, "2010 Amendments." Thus, contrary to the district courts' holdings, expert witness-related documents and communications lying beyond the scope of Rules 26(b)(4)(B) or (C) are still protected work product if they fall within the scope of Rule 26(b)(3)(A).

In particular, to the extent Dr. Mackay's and Dr. Kelsh's communications with Chevron employees and other Chevron-retained experts—including members of their own respective teams—fit within Rule 26(b)(3)(A)'s definition of trial preparation material and do not identify facts or data considered by Dr. Mackay or Dr. Kelsh, that protection is not limited, reduced or eliminated by Rule 26(b)(4)(C). As the Advisory Committee notes, "communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected" by the provisions of Rule 26(b)(4)(C). Fed. R. Civ. P. 26 Advisory Committee's Note, "2010 Amendments." These communications relate to litigation and technical strategy, investigation, general case information, and case management that were "intended to be confidential and made in anticipation of litigation." *In re Cendant Corp. Sec. Litig.*, 343 F.3d at 667. They are thus protected by Rule 26(b)(3)(A) regardless whether they fall within the scope of Rule 26(b)(4)(C).

**III.    Protecting The Documents At Issue Furthers The Goals Of The 2010 Amendments.**

Because the plain text of Rule 26 is clear, examining the underlying purpose of the Rule and the amendments thereto is unnecessary.   But Respondents' interpretation of the Rule has the added virtue of advancing the underlying purpose of the 2010 Amendments.   Prior to the 2010 Amendments, the Rules Committee had been "told repeatedly" about the undesirable effects of "routine" discovery of expert communications:   "Costs have risen.   Attorneys may employ two sets of experts—one for purposes of consultation and another to testify at trial . . . . [E]xperts adopt strategies that protect against discovery but also interfere with their work."  Fed. R. Civ. P. 26 Advisory Committee's Note, "2010 Amendments."

In amending Rule 26, the Rules Committee specifically stated that the 2010 changes—including the elimination of the "data or other information" language from Rule 26(a)(2)(B)—were "intended to alter the outcome" of earlier decisions that limited collaboration and coordination with testifying experts by removing some of the inefficiencies and expenses plaguing the process of working with experts.   *Id.*   Therefore, it would make little sense for the rules to protect communications between an attorney and a testifying expert, and between an attorney and a consulting expert, but not between the experts themselves and not between experts and in-house scientists or other vital members of the litigation

33

team.  Implementing such a distorted interpretation of the rule, as the ROE urges, would only force consulting experts and in-house scientists to route their communications with testifying experts through the attorneys, and vice versa, resulting in exactly the inefficient, costly, and counterproductive process the Rules Committee intended to avoid.

# CONCLUSION

For the foregoing reasons, Appellants respectfully request that the Court reverse the judgments below and hold that Respondents' materials prepared in anticipation of litigation or for trial, in connection with the work of an expert witness for a party to the underlying litigation, are protected by Rule 26(b)(3)(A) even though they fall outside the narrower protections of Rule 26(b)(4)(B) or (C).

Respectfully submitted,

_____/s/ Ethan D. Dettmer_____
Ethan D. Dettmer

THEODORE J. BOUTROUS, JR.
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7804
F: (213) 229-7502

ETHAN D. DETTMER
ENRIQUE A. MONAGAS
JOSHUA S. LIPSHUTZ
555 Mission Street, Suite 3000
San Francisco, CA 94105
T: (415) 393-8292
F: (415) 374-8444

*Attorneys for Chevron Corporation,*
*Dr. Douglas M. Mackay and*
*Dr. Michael A. Kelsh*

Dated: June 25, 2012

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellants certify that there are no related appeals pending in the Ninth Circuit.

 /s/ Ethan D. Dettmer_____

Dated:  June 25, 2012

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I, the under-signed counsel, certify that this Appellants' Opening Brief is proportionately spaced, has a typeface of 14 points or more, and contains 7,563 words of text (not counting the cover, Tables of Contents and Authorities, this Certificate of Compliance, the Statement of Related Cases, the Proof of Service, or the Addendum) according to the word count feature of Microsoft Word used to generate this Brief.


   /s/ Ethan D. Dettmer_____


Dated:  June 25, 2012

**ADDENDUM TO APPELLANTS' CONSOLIDATED OPENING BRIEF**

## RELEVANT FORMER AND CURRENT VERSIONS OF FEDERAL RULE OF CIVIL PROCEDURE 26

### Fed. R. Civ. P. 26(a)(2)(B) (1993)

(a) Required Disclosures; Methods to Discover Additional Matter.

. . .

(2) Disclosure of Expert Testimony.

. . .

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

### Fed. R. Civ. P. 26(a)(2)(B) (2010)

(a) Required Disclosures.

. . .

(2) *Disclosure of Expert Testimony.*

. . .

(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

> (ii) the facts or data considered by the witness in forming them;

> (iii) any exhibits that will be used to summarize or support them;

> (iv) the witness's qualifications, including a list of all publications authored

in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

**Fed. R. Civ. P. 26(b)(3)(A) (2010)**

(b) Discovery Scope and Limits.
. . .
(3) *Trial Preparation: Materials.*

(A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**Fed. R. Civ. P. 26(b)(4)(B) (2010)**

(b) Discovery Scope and Limits.
. . .
(4) *Trial Preparation: Experts.*
. . .
(B) Trial-Preparation Protection for Draft Reports or Disclosures.  Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

**Fed. R. Civ. P. 26(b)(4)(C) (2010)**

(b) Discovery Scope and Limits.
. . .
(4) *Trial Preparation: Experts.*
. . .
(C) Trial-Preparation Protection for Communications Between a Party's Attorney

and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

> (i) relate to compensation for the expert's study or testimony;

> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.